THOMAS PORTERFIELD *v.* MOSES GREENWOOD & Co. et al.

SIMULATED SALE.—At a Sheriff's sale of property, the brother of the defendant became the purchaser. Under the facts of the case, the purchase was regarded as a family arrangement, to screen the property of the true owner from the pursuit of his creditors.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J. *Ogden & Leovy,* for plaintiff. *Semmes & Edwards,* for defendants and appellants.

SPOFFORD, J. The slave *Mary* was attached in New Orleans, at the suit of *Moses Greenwood & Co.* against *William Porterfield,* a resident of Vicksburg, Mississippi. The seizure was made on the 19th of March, 1852, and released, by consent of parties, on the 31st of the same month, the slave being placed in the hands of a third person for sale, the proceeds to abide the event of the suit.

PORTERFIELD
v.
GREENWOOD.

On the 15th of May, 1852, the present suit was instituted. *Thomas Porterfield* claims title to the slave, and five hundred dollars as damages for her illegal seizure. In the District Court, there was judgment in his favor for the slave and against him on his claim for damages. *Moses Greenwood & Co.* have appealed, and the plaintiff asks that the judgment in his favor be so amended as to allow him the damages claimed in his petition.

The title set up by *Thomas Porterfield*, is based upon a Sheriff's sale made in Warren County, Mississippi, on the 3d of November, 1851, under a *fi. fa.* upon a forfeited forthcoming bond taken in the suit of *White & Barnes* against *William Porterfield.* The Sheriff's return recites, that he sold the negroes *Bartlett* and *Judah,* and *Polly* and *Mary Loo, Simpson, Jim, Titus, Joshua, Mary* and child, *John* and *Martha,* to *Thomas Porterfield,* for $1961, being the amount of his several bids for said negroes as they were separately offered, he being the highest bidder therefor, and defendant, *William Porterfield,* paying the balance. This execution is satisfied.

There is no positive evidence in the record to identify the slave seized at the suit of *Greenwood & Co.,* as being one of the slaves sold under this execution. This alone would have been sufficient to defeat the plaintiff.

But since the parties have argued the case at great length on the supposition that the identity might be considered as established, it is proper that we should express our opinion upon the question of the reality of the plaintiff's title.

*William* and *Thomas Porterfield* are brothers. *William,* the elder, is a man of considerable fortune, but is proved to have been in the habit of keeping the titles to his most valuable property in the names of other persons. There may not be an impropriety in such a course, provided the party who follows it, is punctual in the payment of his debts. But if, as in this instance, he is frequently involved in litigation, the fact acquires significance.

*William Porterfield* was present at the sale of his negroes, when *Thomas* became the purchaser. The money was paid by the clerk of a wharfboat at Vicksburg, beloning to *Porterfield & Co.,* of which firm *William Porterfield* was the principal, if not the sole member. The negroes went away from the auction stand with the two brothers. It does not appear that *Thomas* ever had any exclusive possession of the slaves after his purchase, if, indeed, he can be said to have had any possession at all. He was quite a young man at the date of the Sheriff's sale, and his previous employment, as well as his reputation among his neighbors, do not indicate that he was possessed of means to make such a purchase. The fact that there was no competition in bidding, although there were many persons present, and the slaves were knocked off for less than a third of their value, seems to show that the sale was regarded, among the bystanders, as a family arrangement.

But the strongest of all the circumstances against the plaintiff's pretensions, is, that he did not send a power of attorney here to sell the slave in question as his. The letter to *E. J. Hart & Co.,* of this city, to whom the slave was sent from Vicksburg, on the 26th December, 1851, with authority to sell her, was signed "*Porterfield & Co.,*" and did not intimate that she was the property of *Thomas Porterfield.* Under the evidence, we regard it as doubtful whether the firm of *Porterfield & Co.* consisted of any other person than *William Porterfield.*

If all these circumstances had transpired in Louisiana, we should not hesitate to pronounce the title of *Thomas Porterfield* a simulation. And we have

no reason to believe that such a title would be maintained against creditors under the law of Mississippi, as administered in their courts of equity jurisdiction.

It is therefore ordered, that the judgment of the District Court be reversed, and that there be judgment for the defendants, with costs in both courts.